IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | CIVIL ACTION |
| CATHERINE O. PICCOLI | : | |
| Debtor and Appellant | : | NO. 06-2142 |

**MEMORANDUM**

Baylson, J.                                                                                            September 27, 2007

## I.  Introduction

Catherine Piccoli (the "Debtor" or "Piccoli") appeals the April 12, 2006 Judgment of the Bankruptcy Court for the Eastern District of Pennsylvania denying her Motion to Convert her bankruptcy petition originally brought under Chapter 7 to one under Chapter 13, pursuant to Section 706(a) of the Bankruptcy Code, ("Motion to Convert") based on a finding of bad faith. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## II.  Factual and Procedural Background

On October 10, 2005, Piccoli filed a voluntary Bankruptcy Petition under Chapter 7 of the Bankruptcy Code, with a schedule listing her real property as 348 N. Scott Avenue, Glendolen, PA.  ®. Index #7 at T-1.)  The schedule indicated Piccoli valued the home at $70,000, with a secured claim against it for $23,033, and owned the property jointly.  On October 14, 2005, Terry Deshaw, Esq., (the "Trustee") was appointed as trustee for Piccoli's case.  The parties held a meeting of creditors on November 17, 2005 during which Trustee first learned that Piccoli had transferred her interests in her home to her daughter, Donna Oxner, and son-in-law only 16

months before initiating this bankruptcy proceeding.

After the first meeting of the creditors, Piccoli and her former attorney began negotiations with the Trustee to settle the case. Under the proposed settlement, Piccoli would pay all of her unsecured debt and a fee to the trustee so the home would not be sold to pay her creditors. During these discussions, Piccoli filed an Amended Chapter 7 Schedule F listing new unsecured debt and deleting other debt that was initially listed in her Petition filed October 10, 2005. ®. Index #7 at T-6.) The Amended Schedule reduced the total of amount her unsecured debt from $48,742 to $14,394. Piccoli argues this adjusted total deducts debts that belong to her late husband. (Appellee's Reply Br., 2.)

In order to verify the amount of Piccoli's reported debt, the Trustee reviewed the Eastern District of Pennsylvania Claims Register, which lists both the secured and unsecured claims filed against Piccoli. ®. Index #7 at T-5.) The Register indicated the total unsecured claims as $45,580 and the total secured debt as $22,382 ®. Index #7 at T-5). Based on his findings, the Trustee expressed his concern to Piccoli's former attorney that the claims listed on the Register significantly exceeded the Amended Schedule and indicated "that the claims were going to have to be paid as a result of the equity in the real estate." (Tr. Apr. 3, 2006, 31.) Piccoli's attorney then withdrew and was replaced by her present counsel.

On March 10, 2006, Piccoli filed a Motion to Convert her case from Chapter 7 to Chapter 13 ("Motion to Convert"), pursuant to Bankruptcy Code Section 706(a). ®. Index #5.) On March 11, 2006, the Trustee filed his Objection to the Motion to Convert on the grounds Piccoli had filed her Motion in bad faith, understated the value of the home, and misrepresented the total value of her unsecured claims. ®. Index #6.) The Trustee indicated he believed the actual value

of the home was between $102,000 and $120,000.  ®. Index #6 at T-X.)  On March 14, 2006, Piccoli submitted her Chapter 13 Plan, proposing she pay $40 per month, for three years, or $1,440 total, to the Trustee to be distributed to her creditors.  ®. Index #7 at T-7.)

On April 3, 2006, the Bankruptcy Court held a hearing to consider the Motion.  (Tr. 1 - 48.)  At the hearing, Piccoli testified she had transferred the home to her family to ensure it would stay within her family when she died and not to avoid creditors.  During her own testimony, Piccoli's daughter confirmed this was Piccoli's purpose for the ownership transfer.  She also testified she and her husband had financially assisted Piccoli for at least seven years.  This assistance included payment for the upkeep of the home and property taxes.  While Piccoli's daughter testified she was not aware of the extent of her mother's credit card debt at the time of the transfer, she acknowledged she knew it existed, and also knew of the two mortgages on the home and Piccoli's inability to pay her property taxes.  She attributed her mother's financial situation, in part, to her limited income and the fact her father had no life insurance when he died.

During the hearing, the Trustee testified that he believed there was substantially more equity value in the home than Piccoli reported in her Bankruptcy Petition.  (Tr. 24.)  The Trustee also stated, pursuant to the Bankruptcy Code, he did not believe Piccoli would qualify as a Chapter 13 creditor and that her plan was unconfirmed.  In support of his belief, he noted there were "questions of abuse" relating to Piccoli's amendment of the schedule to reduce her creditors, intentional undervaluing of the home, and her inability to fund a Chapter 13 plan due to her limited income.  At the time of the hearing, the Trustee had neither appraised nor filed any action to set aside the partial conveyance of the home.

At the end of the hearing, the Bankruptcy Court Judge suggested the home should be appraised. In response to this suggestion, Piccoli's attorney informed the Court an appraisal had been performed, which valued the home at $93,000. Piccoli's attorney indicated they had not submitted the appraisal because she did not agree with the valuation and that it should not be entered into the record because the appraiser was not before the court to testify regarding the valuation.

On April 12, 2006, the Bankruptcy Court held Piccoli did not have an absolute right to convert under Section 706(a) of the Bankruptcy Code and denied her Motion to convert her case to Chapter 13. The Bankruptcy Court found the purpose of Piccoli's motion to covert was "intended for the sole purpose" of defeating Trustee's contemplated action to seek an avoidance of the transfer of Debtor's interest in the residence to her daughter and son-in-law and that liquidating the home under Chapter 7 would "likely substantially pay her creditors." In re Piccoli, No. 05-35170DWS, at *2 (Bankr. E.D. Pa. Apr. 12, 2006). In reaching its decision, the Court applied the five factors outlined in In re Pakuris, 262 B.R. 330 (Bankr. E.D. Pa. 2001), and found "the conversion sought [was] a blatant manipulation of the Bankruptcy Code" and an abuse of the bankruptcy process. Piccoli, at *1 n.1.

First, the Court found the proposed Chapter 13 plan was unconfirmed and "Debtor's motive for conversion is to avoid fair payment to her creditors who would receive a substantial distribution in Chapter 7." Id. Second, the Court concluded it would be a waste of judicial resources and an abuse of the bankruptcy process to allow Piccoli to convert her case to a Chapter 13 proceeding since it would ultimately be reconverted to Chapter 7. Third, the Court also found that under Chapter 7, the equity in Piccoli's home would return more to her creditors

than under her Chapter 13 plan.

The Court relied on Piccoli's $93,000 appraisal of the home to calculate how much would be realized if the home were sold. The Court emphasized the fact that Piccoli, who had no real estate experience, testified the value of the home was $70,000 despite her awareness that it was appraised at a significantly higher value and that "Debtor's counsel sought to justify his failure to elicit the higher value Debtor obtained from a professional by claiming [Piccoli] didn't agree with it." Id. at *2 n.3.

Currently before this Court is Piccoli's appeal of the Bankruptcy Court's denial of her Motion to convert her case from Chapter 7 to Chapter 13 under Section 706 of the Code. On appeal, Piccoli raises the following issues:

(1) Whether under the Bankruptcy Code, 11 U.S.C. Section 706(a), an insolvent individual has an "absolute right" to convert his or her case from Chapter 7 to Chapter 13 or whether the bankruptcy court has discretion to grant or deny conversion if the motion is made in "bad faith."

(2) Whether the Bankruptcy Court properly consider an appraisal of Debtor's home, which was not entered into evidence, as the basis for its decision.

On November 13, 2006, this Court ordered the appeal be placed in suspense pending a ruling by the Supreme Court in Marrama v. Citizens Bank of Mass., 430 F.3d 474 (1st Cir. 2005), which raised the issue of whether a debtor has an absolute right to convert his or her case under Section 706, which is central to the appeal of this case. Now that the Supreme Court decision has been filed, this appeal will be removed from suspense and decided.

### III.   Jurisdiction and Standard of Review

In an appeal from a bankruptcy court decision, the district court sits as an appellate court.

11 U.S.C. § 158(a)(1).  This Court reviews a bankruptcy court's legal determinations *de novo* and factual findings for clear error.  See Fed. R. Bankr. P. 7052 ("Rule 52 F. R. Civ. P. applies in adversary proceedings."), 8013; In re DiLoreto, No. 04-1326, 2006 WL 2974156, at *1 (E.D. Pa. Oct. 13, 2006) (citing In re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983)).  A trial court's findings of fact are clearly erroneous when, after reviewing the record, the appellate court "is left with the definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 105 S. Ct. 1504, 1511 (1985) (quoting United States v. U.S. Gypsum Co., 68 S. Ct. 525, 542 (1948)).  Under this standard, "[i]t is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data."  DiFederico v. Rolm Co., 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).  Further, in this Court's review of the bankruptcy court's factual findings, credibility determinations will be given "due regard."  Fed. R. Bankr. P. 7052, 8013; see DiFederico, 201 F.3d at 208 (noting "findings involved credibility determinations which are supported by the record and which we will not second-guess").

      A bankruptcy court's decision to deny a motion to convert based on a finding of bad faith is reviewed for abuse of discretion.  In re Meyers, No. 05-4882, 2007 WL 1775125, at *3, 5 (3d Cir. June 21, 2007).  The Third Circuit recognizes that a bankruptcy court's finding of bad faith "is a fact intensive determination better left to the distraction of the bankruptcy court."  In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (quoting In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992)).  As a result, a bankruptcy court's bad faith finding will not be set aside unless clearly erroneous.

## IV.     Discussion

As the Supreme Court recently explained, both Chapter 7 and Chapter 13 allow insolvent individuals to discharge certain prepetition debts. Marrama v. Citizens Bank of Mass., 127 S. Ct. 1105, 1107 (2007).  Chapter 7 enables the debtor to discharge prepetition debts subsequent to liquidation of the debtor's assets by a bankruptcy trustee; the trustee then distributes the proceeds to the creditors.  Id. Chapter 13 enables an individual with regular income to obtain a discharge following the bankruptcy court's approval of a payment plan.  Id.  Chapter 7 requires the bankruptcy trustee to control the debtor's non-exempt assets, while under Chapter 13, the debtor retains control over his or her property.  Id.  A debtor who initially files his or her bankruptcy petition under Chapter 7 may convert it to Chapter 13.  11 U.S.C. §§ 706(a), 1307(a), (c).

### A.     Debtor Does not have an Absolute Right to Convert her Case from Chapter 7 to Chapter 13 under the Bankruptcy Code

Section 706 of the Bankruptcy Code provides, a "debtor may convert a case under [chapter 7] to a case under chapter . . . 13 of this title at any time, if the case has not been converted under section . . . 1307 of this title."  11 U.S.C. § 706(a).  However, "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."  11 U.S.C. § 706(d).

Piccoli contends Bankruptcy Code § 706(a) accords her an "absolute" right to convert her case, voluntarily filed under Chapter 7, to Chapter 13.  Piccoli argues the Bankruptcy Court erred in holding that she does not have an absolute right to convert her case under Section 706.

The Trustee contends Piccoli's right to convert is subject to the discretion of the Bankruptcy Court and not absolute.  The Trustee argues conversion is dependant on Piccoli's

good faith and the absence of any abuse of the bankruptcy system. The Trustee notes the plain language of Section 706(a) imposes two limitations on a debtor. First, the debtor must not previously have converted the case and, second, the debtor must qualify as a debtor under the chapter to which he intends to convert. On review, the Trustee argues deference should be given to the Bankruptcy Court's discretion concerning whether to bad faith exists and whether conversion would be objectively futile.

In Marrama, the Supreme Court has held there is no absolute right to convert a Chapter 7 case to one under Chapter 13, pursuant to Section 706(a), and that bad faith conduct acts as a sufficient basis to deny conversion. Marrama, 127 S. Ct. at 1110 – 12. In Marrama, the debtor appealed the bankruptcy court's denial of his motion to convert his case from Chapter 7 to Chapter 13 because the Court found the debtor had acted in bad faith. Id. at 1109. The Supreme Court rested its decision on three main arguments. First, the Supreme Court reasoned that while Section 706(a) of the Bankruptcy code proves a "debtor may convert a case," the right is qualified by subsection (d). Id. at 1110. Under subsection (d), the debt must qualify as a Chapter 13 debtor, pursuant to Sections 109(e) and 1307(c) of the Code. Second, the Court noted bankruptcy courts have routinely found that dismissal of a Chapter 13 case for prepetition bad faith conduct is implicitly authorized by the words "for cause" in Section 1307(c). Id. Finally, the Court found nothing in Sections 706 or 1307, which "limits the authority of the of the [bankruptcy] court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that his not entitled to the relief available to the typical debtor." Id. at 1111. Ultimately, under Marrama, bankruptcy courts have broad discretion in determining whether a debtor has acted in bad faith and that the presence of bad faith is sufficient ground to

deny a debtor's motion to convert his or her case under Section 706.  In re Truong, No 03-40283 (NLW), 2007 WL 708874, at *12 (Mar. 5, 2007 Bankr. D.N.J.) (discussing the holding of Marrama).

Piccoli contends the Supreme Court's Decision in Marrama should be limited to "atypical" "extraordinary situations" where the debtor may not qualify for Chapter 13 relief and is engaged in gross concealment of assets and fraud, such as the debtor in Marrama.  (Appellant Mem., Feb. 26, 2007.)  Piccoli argues she is an aged debtor who fully disclosed her interest in a "modest home" and is a "far cry" from the Marrama debtor.  (Id.)  Piccoli asserts she fits into the "class of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13."  Marrama, 127 S. Ct. at 1111.

This Court affirms the Bankruptcy Court's finding that Piccoli does fit into the category of debtors who do not qualify for Chapter 13 relief.  While Piccoli's case is not as egregious example of an abuse of the bankruptcy system as Marrama, her behavior is "aytipical," and not consistent with that of an "honest but unfortunate debtor."  Id. at 1107, 1111.

**B.** **The Bankruptcy Court's Finding of Bad Faith was Not Clearly Erroneous**

Piccoli argues the Bankruptcy Court erred by denying her Motion to Convert because it found she acted in bad faith.  She contends the transfer of the home to her family more than a year prior to filing for bankruptcy was to keep the home within her family and that she received consideration for the home in that Piccoli's daughter and her husband promised to pay the property taxes and other significant maintenance expenses for the home.  She further contends the sale of the home does not make economic sense.  Finally, Piccoli argues Pakuris is distinguishable from the present case because unlike the Pakuris debtor, Piccoli filed her Motion

to Convert prior to the administration of her case, proposed a confirmable plan, and is not a serial filer within the bankruptcy system.

The Trustee argues the Bankruptcy Court properly weighed all evidence in the record when it denied the motion to convert. The Trustee suggests this Court's review of the Bankruptcy Court's findings should be for "clear error only," since concepts of "good faith" and "abuse" are factual determinations. (Appellee Br. 17 – 18.) The Trustee argues the Bankruptcy Court appropriately considered the five factors enumerated in Pakuris and its findings are supported by the facts on the record.

In Marrama, the Supreme Court recognized bankruptcy courts have broad authority under Sections 706 and 1307 of the Bankruptcy Code to deny a motion to convert a bankruptcy petition under Section 706 where a debtor exhibits bad faith. Marrama, 127 S. Ct. at 1106 - 7. While the Supreme Court did not expressly identify what conduct qualifies as bad faith, the Court "emphasize[d] that the debtor's conduct must, in fact, be atypical." Marrama, 127 S. Ct. at 1112 n.11.

The Third Circuit, in its review of a bankruptcy court's dismissal of a Chapter 13 petition, held that although there is not an explicit good faith requirement under this Chapter, Section 1307(c) provides that Chapter 13 petitions may be dismissed "for cause." 11 U.S.C. § 1307(c), In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996). In Lilley, the Third Circuit recognized that lack of good faith in filing is sufficient cause for dismissal under Section 1307(c). Id. Good faith filing analysis must be performed "on a case-by-case basis in light of the totality of the circumstances." Id. (citing In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992)). In assessing the totality of the circumstances, the court should consider:

> the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Id. (citation and footnote omitted). The Lilley court also recognized "the good faith inquiry is a fact intensive determination better left to the secretion of the bankruptcy court." Id. at 496 (citation omitted).

The same good faith analysis performed when evaluating a Chapter 13 petition should be performed when evaluation a motion to convert, pursuant to Section 706(a), from Chapter 7 to Chapter 13. See Marrama, 127 S. Ct. at 1107 (recognizing bad faith conduct as grounds to deny conversion under both Section 706(a) and 1307(c)). In reviewing motions to convert under Section 706, Bankruptcy Courts in the Third Circuit generally follow the analysis described in Lilley. See In re Pakuris, 262 B.R. 330, 335 (Bankr. E.D. Pa. 2001); see also In re Porreco, 333 B.R. 310 (W.D.Pa. 2005) (in deciding to grant motion to convert Chapter 7 case to Chapter 13, court adopted Pakuris factors). In Pakuris, the court adopted the criteria from Lilley in order to evaluate whether a debtor filed his motion to covert a bankruptcy petition, pursuant to Section 1307(c), in good faith. Specifically, according to Pakuris, when evaluating the totality of the circumstances, the court must consider:

> (i) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);
> (ii) whether the debtor can propose a confirmable chapter 13 plan;
> (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;
> (iv) the effect of conversion on the efficient administration of the bankruptcy estate; and

(v) whether conversion would further an abuse of the bankruptcy process.

262 B.R. at 335-6. The bankruptcy petitioner has the burden of persuasion on the issue of whether the debtor filed his or her motion to convert in good faith. In re Porreco, 333 B.R. at 336 n.13; See In re Integrated Telecom Express, 384 F.3d 108, 118 (3d Cir. 2004) (determining debtor had burden of persuasion to establish that he filed his Chapter 11 petition in good faith); Pakuris, 262 B.R. at 336 n.13.

In the present case, the Bankruptcy Court's decision to deny Appellant's motion to convert was not clearly erroneous and therefore, not an abuse of discretion. The Bankruptcy Court considered the Pakuris factors and relevant evidence in reaching its decision to deny Piccoli's Motion. While the Bankruptcy Court did not precisely enumerate its analysis and findings according to the Pakuris factors, the Court ultimately followed these guidelines in reaching her decision.

### 1. The Bankruptcy Court's Conclusion the Debtor's Conversion Motion Was Not Filed in Good Faith Will Be Affirmed

The record supports the Bankruptcy Court's conclusion that Piccoli's Motion to covert her case to Chapter 13 was not made in good faith. Analysis of "a debtor's conduct pre-bankruptcy and in chapter 7 before conversion are relevant factors in analyzing a debtor's motive or bad faith in seeking conversion," however greater emphasis should be placed on a debtor's purpose for seeking conversion. Pakuris, 262 at 336.

First, the timing of Piccoli's motion to convert is suspicious. See Meyers, 2007 WL 1775125, at *4 (recognizing the Third Circuit has "held suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis.") Prior to filing

her motion to convert, Piccoli's former counsel was negotiating with the Trustee to pay all of the unsecured claims so Piccoli could retain ownership of the home. (Tr. 30.) As part of these negotiations, Appellant sought to reduce the reported value of her unsecured debts from $48,742 to $14,394. (Tr. 28 – 30; R. Index #7 at T-1, 5, 6.) As the Trustee testified, however, it became apparent to him that the claims filed by her creditors in the present case exceeded Piccoli's amended schedule. (Tr. 30 – 31; R. Index #7 at T-5, 6.) Only after Piccoli learned that the Trustee intended on pursuing the equity in the home to replay her unsecured creditors that she filed the present Motion and her Chapter 13 Plan as an attempt to retain control of her home. (Tr. 31.)

Second, the record demonstrates that Piccoli was not honest and forthright with the Bankruptcy Court and the Trustee. This lack of candor supports the Bankruptcy Court's determination Piccoli's $70,000 valuation was not credible. See <u>Piccoli</u>, at 2 n.3 (noting Piccoli has no real estate experience and that the Trustee, relying on data he routinely relies on in valuing real estate, valued the home at substantially more than Piccoli in her Bankruptcy Petition Schedules). Piccoli did not disclose the full value of the home and testified its value was $70,000, despite her awareness that an appraisal was performed on the residence, valuing the property at $93,000. (Tr. 6, 44 - 47; R. Index #7 at T-1.) While both Piccoli and her daughter testified that because the home needs substantial repairs, this could justify a lower valuation (Tr. 12), Piccoli's daughter testified her husband and she "put quite a bit of money into the house over the years . . . even when [her] father was alive" (Tr. 11).

Piccoli also engaged in a prepetition transfer of the residence, which the Trustee alleges to be fraudulent. The issue of whether the prepetition transfer was fraudulent is not before this

Court.

Piccoli transferred a majority interest in her home to her family. At the time of transfer, both Piccoli and her family knew of her substantial credit card and mortgage debts. (Tr. 5, 6, 8, 11, 13.) Piccoli's daughter also testified that prior to her father's death, the family consulted with another attorney to determine whether Piccoli's daughter and son-in-law should be added to the deed. (Tr. 11.) The attorney told the family "they didn't need to do that," because upon her parents' deaths, she would automatically inherit the home. (Id.) Despite this professional legal advice, Piccoli transferred ownership to her family.

Further, the transfer of the home to her family was for no new consideration. Piccoli testified she did not receive any money from her family in exchange for an ownership interest in the home. (Tr. 8). Her family had paid for the maintenance and property taxes of the home for years prior to the May, 2004 transfer. (Tr. 11, 12, 14.)

Finally, as part of this Court's review of the good faith issue, Piccoli's motivation for conversion must be considered. Pakuris, 262 B.R. at 336. Piccoli's timing and lack of new consideration for the transfer of ownership to her family, understatement of debt during negotiations to settle the case, testimony at trial, and her acknowledgment that a Chapter 13 trustee was less likely to pursue the fraudulent conveyance of the residence to her family, all support the finding that Piccoli sought to avoid the consequences of Chapter 7 by converting to Chapter 13. (Tr. 34, 39, 45.) See Pakuris, 262 B.R. at 336 (finding debtor's attempt to avoid the consequences of her Chapter 7 filing by converting to Chapter 13 "demonstrates a failure to meet the good faith filing requirement" under § 706(a)).

    **2.**    **Miscellaneous**

This Court finds that the Bankruptcy Court's determination that Piccoli's Chapter 13 plan is not confirmable under the Bankruptcy Code, is supported by the record.  Any dispute about the Bankruptcy Court's mathematical calculations is not grounds for reversal.

The Court also finds that the creditors will be prejudiced if the conversion motion is granted, and conversion would be an inefficient administration of the bankruptcy estate, if not an abuse of the bankruptcy process.

The Court also concludes that there was no improper admission of evidence, as the evidence ruling was within the discretion of the Bankruptcy Court and there does not appear to have been any objection to the introduction of the challenged evidence at trial.

## V.     Conclusion

For all the above reasons, the Bankruptcy Court's decision will be affirmed and the matter will be remanded to the Bankruptcy Court.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | CIVIL ACTION |
| CATHERINE O. PICCOLI | : | |
| Debtor and Appellant | : | NO. 06-2142 |

**ORDER**

AND NOW, this 27th day of September, 2007, it is hereby ORDERED as follows:

1. This case is removed from the civil suspense docket.

2. The Order of the Bankruptcy Court dated April 12, 2006 is affirmed.

3. This matter is remanded to the Bankruptcy Court.

4. The Clerk shall close this case.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-2142 Piccoli\Picolli 06-2142 - Memorandum bankruptcy appeal.wpd